**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Bloomington Lincoln Mercury Inc. d/b/a Lincoln of Bloomington, | Case No. 0:25-cv-00051-ECT-SGE |
| Plaintiff, | **DEFENDANT CLEAR BLUE SPECIALTY INSURANCE COMPANY'S ANSWER AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT** |
| v. | |
| Clear Blue Specialty Insurance Company, | |
| Defendant. | |

**ANSWER**

Defendant Clear Blue Specialty Insurance Company, ("Defendant" or "Clear Blue"), by its undersigned attorneys, as and for its Answer, Affirmative Defenses, and Counterclaim to the Complaint of Plaintiff Bloomington Lincoln Mercury Inc. d/b/a Lincoln of Bloomington ("Plaintiff" or "Lincoln of Bloomington") states and alleges as follows:

**NATURE OF PROCEEDING**

1. Paragraph 1 of the Complaint states legal conclusions. To the extent a response is required, Defendant denies that Plaintiff is entitled to the relief sought and affirmatively alleges it is entitled to a declaration that the relevant insurance Policy does not afford coverage for Plaintiff's claims.

## THE PARTIES & VENUE

2.    Upon information and belief, Defendant admits Paragraph 2 of the Complaint.

3.    In response to Paragraph 3, Defendant admits that it is an insurance company authorized to issue insurance policies and transact business in Minnesota. It further admits that it entered into an insurance contract with Plaintiff and affirmatively alleges that the terms of said Policy speak for themselves.

4.    In response to Paragraph 4, Defendant admits that Plaintiff has its principal place of business in Hennepin County and affirmatively alleges that this Court has jurisdiction and is the proper venue for this matter, as set forth in its Notice of Removal (Dkt. 1).

## FACTS RELEVANT TO ALL COUNTS

5.    Defendant lacks sufficient information to admit or deny Paragraph 5 of the Complaint and therefore denies the same.

6.    Defendant lacks sufficient information to admit or deny Paragraph 6 of the Complaint and therefore denies the same.

7.    Defendant lacks sufficient information to admit or deny Paragraph 7 of the Complaint and therefore denies the same.

8.    With respect to Paragraph 8 of the Complaint, Defendant admits that it issued an insurance Policy to Plaintiff and affirmatively alleges the terms of the Policy speak for themselves. A true and correct copy of the Policy is attached hereto as **Exhibit A** ("Policy").

9.      With respect to Paragraph 9 of the Complaint, Defendant admits that it issued an insurance Policy to Plaintiff and affirmatively alleges the terms of the Policy speak for themselves. Defendant denies the Policy provides coverage for the July 20, 2023, hailstorm claim.

10.     With respect to Paragraph 10 of the Complaint, Defendant affirmatively alleges the terms of the Policy speak for themselves. Defendant denies the Policy provides coverage for the July 20, 2023, hailstorm claim and affirmatively alleges the Court should issue a declaratory judgment affirming that the Policy does not afford coverage for Plaintiff's claims.

11.     Defendant denies Paragraph 11 of the Complaint.

12.     With respect to Paragraph 12 of the Complaint, Defendant affirmatively alleges the terms of the Policy speak for themselves. Defendant denies the Policy provides coverage for the July 20, 2023, hailstorm claim and affirmatively alleges the Court should issue a declaratory judgment affirming that the Policy does not afford coverage for Plaintiff's claims.

13.     Defendant denies Paragraph 13 of the Complaint. Defendant affirmatively alleges the Court should issue a declaratory judgment affirming that the Policy does not afford coverage for Plaintiff's claims.

14.     Defendant denies Paragraph 14 of the Complaint. Defendant affirmatively alleges the Court should issue a declaratory judgment affirming that the Policy does not afford coverage for Plaintiff's claims.

15.     In response to Paragraph 15 of the Complaint, Defendant admits that Plaintiff submitted an insurance claim to it and otherwise denies Paragraph 15. Defendant specifically denies that it wrongfully denied Plaintiff's claim. Defendant affirmatively alleges the Court should issue a declaratory judgment affirming that the Policy does not afford coverage for Plaintiff's claims.

16.     With respect to Paragraph 16 of the Complaint, Defendant admits that it denied Plaintiff's claim because it was not covered under the terms of the applicable Policy and otherwise denies Paragraph 16. Defendant affirmatively alleges the Court should issue a declaratory judgment affirming that the Policy does not afford coverage for Plaintiff's claims.

17.     Defendant denies Paragraph 17 of the Complaint. Defendant affirmatively alleges the Court should issue a declaratory judgment affirming that the Policy does not afford coverage for Plaintiff's claims.

18.     Defendant denies Paragraph 18 of the Complaint. Defendant affirmatively alleges the Court should issue a declaratory judgment affirming that the Policy does not afford coverage for Plaintiff's claims.

## COUNT I – DECLARATORY JUDGMENT

19.     In response to Paragraph 19 of the Complaint, Defendant incorporates its responses to Paragraphs 1 through 18 of the Complaint.

20.     In response to Paragraph 20 of the Complaint, Defendant admits that it issued an insurance Policy to Plaintiff and affirmatively alleges the terms of the Policy

4

speak for themselves. Defendant denies the Policy provides coverage for the July 20, 2023, hailstorm claim.

21.    Paragraph 21 of the Complaint states a legal conclusion. To the extent a response is required, Defendant denies that Plaintiff is entitled to the relief sought. Defendant affirmatively alleges the Court should issue a declaratory judgment affirming that the Policy does not afford coverage for Plaintiff's claims.

22.    Paragraph 22 of the Complaint states a legal conclusion. To the extent a response is required, Defendant denies that Plaintiff is entitled to the relief sought. Defendant affirmatively alleges the Court should issue a declaratory judgment affirming that the Policy does not afford coverage for Plaintiff's claims.

<u>**COUNT II – BREACH OF INSURANCE CONTRACT**</u>

23.    In response to Paragraph 23 of the Complaint, Defendant incorporates its responses to Paragraphs 1 through 22 of the Complaint.

24.    In response to Paragraph 24 of the Complaint, Defendant admits that it issued an insurance Policy to Plaintiff and affirmatively alleges the terms of the Policy speak for themselves. Defendant denies the Policy provides coverage for the July 20, 2023, hailstorm claim.

25.    Defendant denies Paragraph 25 of the Complaint.

26.    Defendant denies Paragraph 26 of the Complaint.

27.    Defendant denies Paragraph 27 of the Complaint.

5

28.     Defendant denies Paragraph 28 of the Complaint. Defendant affirmatively alleges the Court should issue a declaratory judgment affirming that the insurance Policy does not afford coverage for Plaintiff's claims.

## AFFIRMATIVE DEFENSES

Defendant further responds to Plaintiff's Complaint by asserting the following Affirmative Defenses:

1.     Plaintiff's Complaint fails to state a claim upon which relief may be granted.

2.     Defendant denies that Plaintiff was damaged to the extent alleged and calls for strict proof of same.

3.     Plaintiff's claims are barred by the terms of the applicable insurance Policy.

4.     Plaintiff's claims are barred as a result of Plaintiff's failure to perform all conditions precedent under the applicable insurance Policy.

5.     Plaintiff's claims are barred, in whole or in part, by its own misconduct.

6.     Plaintiff's claimed damages are speculative and remote.

7.     Alleges that if Plaintiff was damaged as set forth in the Complaint, the same was caused in whole or in part by the action, failure to act, misconduct, or other fault of Plaintiff or other persons or entities over whom Defendant had no control, or right to control, and for whose conduct Defendant is not liable.

8.     Plaintiff has failed to mitigate, reduce or otherwise avoid its damages, if any, and/or has "unclean hands."

6

9.      Plaintiff's claims are barred, in whole or in part, by the doctrines of laches, waiver and estoppel.

10.     Plaintiff's claims are barred by the statute of limitations and/or contractual limitations.

11.     Plaintiff's claims may be barred in whole or in part due to lack of timely or proper notice.

12.     Plaintiff's claims may be barred by spoliation of evidence.

13.     Affirmatively alleges that the insurance Policy issued by Clear Blue provides coverage only pursuant to its terms, conditions, limitations, provisions, exclusions, and/or endorsements.

14.     Plaintiff's claims are barred by the terms, conditions, limitations, provisions, exclusions, and/or endorsements of the Clear Blue Policy applicable to the claims for insurance coverage.

15.     Plaintiff has failed to comply with the terms of the Policy, including failing to provide a sworn proof of loss and complete documents in support of its claimed damages.

16.     Plaintiff's claims are barred by its own breach of contract and/or failure to comply with the terms, conditions, and provisions of the Policy.

17.     Plaintiff's claims may be covered by an insurance policy issued to AJ Importing LLC.

18.     All other affirmative defenses set forth and contemplated by Fed. R. Civ. P. 8 and 12. The extent to which Plaintiff's claims may be barred by one or more of said

7

affirmative defenses not specifically set forth above cannot be determined until there has been further discovery. Defendant, therefore, incorporates all such defenses set forth in, and contemplated by, Rule 8 and 12 as if fully stated herein.

19.    Defendant reserves the right to amend this Answer and assert additional defenses and/or supplement, alter or change its Answer and Affirmative Defenses upon the discovery of more definitive facts and upon completion of continuing investigation and discovery into the matters complained of in Plaintiff's Complaint.

## COUNTERCLAIM

1.    This Court has jurisdiction over Defendant's Counterclaim under 28 U.S.C. § 2201 and § 1332 *et seq*. This action involves citizens and entities of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2.    On or about June 2, 2023, Defendant Clear Blue Specialty Insurance Company issued a Dealer Open Lot Policy to Bloomington Lincoln Mercury, Inc. d/b/a Bloomington Lincoln. Policy number BN01-00496-02 was in effect from June 1, 2023, to June 1, 2024 ("Policy"). A true and correct copy of the applicable Policy is attached hereto as **Exhibit A.**

3.    The Quoted Dealer Location listed on the Policy is Bloomington Lincoln Mercury, Inc. d/b/a Bloomington Lincoln, 1001 Clover Drive S., Bloomington, Minnesota 55420.

4.    The Policy contains the following relevant definitions in **PART I – DEFINITIONS**, as amended by the **RECREATIONAL VEHICLE ENDORSEMENT**:

8

D.   **Auto** means a land motor vehicle or **recreational vehicle** including any permanently attached equipment, or any watercraft taken in trade while such watercraft is on land.

…

F.   **Comprehensive** means **loss,** unless otherwise limited or excluded, to a **covered auto** from any cause except **collision.**

G.   **Comprehensive-general** means **loss,** unless otherwise limited or excluded, to a **covered auto** from any cause except **flood, earthquake,** or **false pretense.**

…

I.   **Coverage territory** is the United States of America, its territories, and possessions.

J.   **Covered auto** means:

a.   An **auto** which is parked at a **location** when not in use or which is in transit to or from a **location,** except if in transit from the **manufacturer,** and (a) which you own, except if you are the lessor, (b) which is in your possession for consignment or sale, (c) which you hire or borrow for a period of less than one year, or (d) of which you are the lessee under a lease for a period of one year or more; …

…

S.   **Location** means a physical property at which **covered autos** are held for **sale,** stored, or used in your business, and (a) which is shown on the Declarations or Evidence of Coverage, (b) which is acquired by you within 30 days preceding the **loss,** if we receive your written notice of the acquisition within such 30 day period, or (c) where you have moved **covered autos** for a maximum of 30 days to avoid a **loss.** If **covered autos** are in transit to or from such a physical property, or are at a physical property where you have moved them to avoid a **loss,** the term **location** in determining applicable "per location" Limits of Insurance and Deductibles refers to the physical property where the **covered autos** would otherwise be held for **sale,** stored, or used in your business.

T.   **Loss** means direct and accidental loss of or damage to **covered autos** resulting from a single cause or event. **Loss** does not include **diminution in value.**

U.   **Manufacturer** means the original equipment manufacturer and any distributor or upfitter that is not the **insured dealer**.

…

9

W.   **Occurrence** means any one **loss,** disaster, casualty, or series of **losses,** disasters, or casualties, arising out of one event. When the term applies to **loss** or **losses** from the perils of tornado, cyclone, hurricane, windstorm, hail, **flood,** riot, riot attending a strike, civil commotion, civil protest, vandalism, or malicious mischief, or a combination of any such perils and a **comprehensive-general** event not listed among such perils, one event shall be construed to be all **losses** arising during a continuous period of 72 hours. When the term applies to **loss** or **losses** from **earthquake** or from a combination of **earthquake** and any other **comprehensive-general** peril or **flood,** one event shall be construed to be all **losses** arising during a continuous period of 168 hours.

…

BB.   **Weather limit** means the Weather Limit of Insurance shown on the Declarations or Evidence of Coverage.

CC.   **Weather** means any and all weather perils including hail, windstorm, sandstorm, weight of snow or ice, tornado, hurricane, tropical storm, tropical depression, and rain. **Weather** excludes **flood** and **earthquake.**

5.   The Policy provides the following relevant grant of coverage in **PART II –**

**COVERAGES**:

A.   COVERAGE. When a premium is shown in the Declarations or Evidence of Coverage, during the **coverage period** and in the **coverage territory,** coverage is provided under:

1.   **Comprehensive** Coverage. We will pay for **loss** (including **economic loss** in a **total theft loss),** unless otherwise limited or excluded, to a **covered auto** from any cause except **loss** due to **collision**. …

6.   **PART III – CONDITIONS**, A. **LOSS** CONDITIONS outlines

3.   Duties in The Event of a **Loss.** In the event of a **loss:**

a.   You must give us:

(1)   Notice of the **loss,** or of an **occurrence** that may lead to a claim under this policy, as soon as reasonably possible but not more than 180 days after the date of the **loss** or **occurrence;**

    (2)    A description of each **covered auto** involved in the **loss** and of how, when and where the **loss** occurred.

b.    You must cooperate with us in:

    (1)    The investigation or settlement of the **loss;** and

    (2)    The investigation, settlement, or conduct of any suit. You shall not, except at your own expense, voluntarily make any payment, assume any obligation, or incur any expense.

c.    You must:

…

    (3)    Give us a complete inventory of the **covered autos,** if we request one.

    (4)    Permit us to:

        i.    Inspect the property and records proving the **loss;**

        ii.    Take samples of damaged property for inspection, testing and analysis; and

        iii.    Inspect and appraise the **covered auto** before its repair or disposition.

…

    (6)    Send us a signed, sworn, statement of **loss** containing the information we request to investigate the **loss** within 60 days after our request. We will supply you with the necessary forms. Additionally, you must hold us harmless against any and all claims made by other parties at interest due to any neglect or failure on your part to comply fully with the conditions of this policy.

7.    **PART III – CONDITIONS**, B. GENERAL CONDITIONS provides in relevant part:

2.    **Coverage Period, Coverage Territory.** We will only pay for **loss** or damage to **covered autos** occurring during the **coverage period** shown on

the Declarations or Evidence of Coverage and within the **coverage territory.**

3. No Benefit To Bailee. We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting **covered autos** for a fee regardless of any other provision of this policy.

…

8. Defendant relies upon and incorporates by reference all the terms, conditions, and provisions of the applicable Policy as set forth in **Exhibit A**.

9. The Policy only affords coverage for **loss** or damage to **covered autos**.

10. **Covered autos** include **autos** when parked at a **location** when not in use or which is in transit to or from a **location**. The **location** means a physical property at which **covered autos** are held for **sale,** stored, or used in Plaintiff's business, which is shown on the Declarations or Evidence of Coverage. That **location**, as defined in the Policy, is the Bloomington, Minnesota address which is Plaintiff's principle place of business.

11. On or about August 22, 2023, Plaintiff, through its agent Dan Ely at Brian Buck, Inc., reported a hail loss claim to Defendant under the Policy. Plaintiff sought in excess of $400,000 for property damage to vehicles.

12. Plaintiff claimed that a hail storm struck on July 20, 2023, at approximately 1:30 p.m. and caused damage to 62 of its vehicles. At the time of the storm, all the vehicles involved in this claim were located at AJ Importing LLC, 5053 East Court St. N., Burton, Michigan 48509.

13. Plaintiff has not provided Defendant with complete records related to its purchase of the vehicles involved in the claim.

14.     Plaintiff has not provided Defendant with complete records related to the import and transportation of the vehicles involved in the claim.

15.     Plaintiff has not provided Defendant with complete records related to the damage and repairs to the vehicles involved in the claim.

16.     Plaintiff has not furnished Defendant with a Sworn Proof of Loss.

17.     Plaintiff reported that the vehicles involved in this claim were purchased from Canada via wholesale bills of sale from Canadian dealerships or auctions. It paid the Canadian dealerships for the vehicles directly via wire transfer.

18.     AJ Importing LLC is a registered importer of motor vehicles licensed with the National Highway Traffic Safety Administration (NHTSA) pursuant to 49 USC § 30141 and 49 CFR § 592 to import vehicles into the U.S. which were not originally manufactured to comply with all U.S. Federal Motor Vehicle Safety Standards (FMVSS).

19.     AJ Importing LLC transports the Canadian vehicles from their points of origin in Canada to Burton, Michigan, through its affiliated trucking company, Baker Auto of Burton. Plaintiff paid Baker Auto of Burton a flat fee per vehicle for the transportation of the vehicles from Canada to Burton, Michigan.

20.     Plaintiff hired AJ Importing LLC to import the vehicles involved in this claim from Canada. Plaintiff paid a separate fee to AJ Importing LLC for the import and titling process.

21.     To pass through U.S. customs, AJ Importing LLC was required to post a mandatory imported vehicle bond pursuant to 49 CFR § 592.6(a), obligating AJ Importing LLC to ensure that all imported vehicles were, or would be, in compliance

with all FMVSS. This generally involved processing the U.S. title paperwork, odometer and speedometer modifications, resolving any open manufacturer recalls on the vehicles, and certification of the vehicles as being compliant with all FMVSS, EPA and DOT requirements. Plaintiff reported that the average time between the date the vehicles were imported from Canada and when they were delivered to its Bloomington, Minnesota dealership was approximately 25 days.

22.     When the federally mandated compliance and titling is approved by the NHTSA on a vehicle, AJ Importing LLC is allowed to release the vehicle to Plaintiff. Plaintiff then retains a trucking company to transport the released vehicles from Michigan to Plaintiff's location in Bloomington, Minnesota. Plaintiff indicated that it receives a truckload approximately once a week with eight or nine cars that have gone through this process with AJ Importing LLC. It pays different trucking companies, based on their availability, to haul vehicles from Michigan to Minnesota.

23.     Plaintiff advised that on average, it has approximately 50 vehicles at AJ Importing LLC at any given time because it is continuously importing vehicles through this process.

24.     Plaintiff never disclosed to Defendant when applying for insurance coverage that it routinely had an average of 50 vehicles kept at AJ Importing LLC in Burton, Michigan.

25.     The vehicles involved in this claim were not at Plaintiff's Bloomington, Minnesota location at the time of the hail storm on July 20, 2023.

26.     The vehicles involved in this claim were not in transit to Plaintiff's

14

Bloomington, Minnesota location at the time of the hail storm.

27.     Rather, the vehicles involved in this claim were stationed at AJ Importing LLC undergoing modifications and approval for titling in the United States. Several vehicles were there for multiple weeks; a chart furnished by Plaintiff shows "importer" dates between May 1, 2023, through July 20, 2023. The date, according to information provided by Plaintiff, represents the date the vehicle arrived at AJ Importing LLC in Burton, Michigan. Approximately ten of the vehicles listed had been at AJ Importing LLC's Burton, Michigan location for 30+ days before the July 20, 2023, storm.

28.     On September 15, 2023, Defendant sent a denial letter to Plaintiff based upon the vehicles involved in the claim not meeting the definition of "**covered auto**" in the Policy because they were stored at AJ Importing LLC, an unlisted location, for an extended period and were not in transit at the time of the loss.

29.     It sent further letters confirming and explaining the denial on April 16 and 22, 2024.

30.     Plaintiff initiated this action against Defendant in Hennepin County District Court alleging causes of action for declaratory judgment and breach of contract.

31.     Defendant timely removed this action because this Court has jurisdiction under 28 U.S.C. § 2201 and § 1332 *et seq*.

32.     A real and justiciable controversy exists between Plaintiff and Defendant and therefore Defendant has asserted this Counterclaim for declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 *et seq*.

## COUNT I: DECLARATORY RELIEF

33.    Defendant incorporates by reference Paragraphs 1-28 of its Counterclaim.

34.    This action is brought under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 *et seq*.

35.    The vehicles involved in this loss are not **covered autos** under the Policy. Accordingly, the Policy does not cover Plaintiff's claims.

36.    Based upon the foregoing, an actual controversy and dispute of a justiciable nature has arisen between Plaintiff and Defendant as to the interpretation of the terms, conditions, exclusions, and provisions of the Policy.

37.    Defendant seeks a determination and declaration from this Court that it has no obligation to cover Plaintiff's loss or to indemnify Plaintiff for the damages asserted in this action.

WHEREFORE, Defendant denies that Plaintiff is entitled to relief of any kind, and respectfully requests that the Court enter judgment against Plaintiff as follows:

1.    Dismissing the Complaint in its entirety with prejudice;

2.    Awarding Defendant its costs, disbursements, and attorneys' fees as permitted by law;

3.    Finding in favor of Defendant on its Counterclaim and declaring that the Policy does not cover Plaintiff's claim; and

4.    Granting such other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Answering Defendants demand trial by jury on all issues so triable.

Respectfully submitted,

Dated:  January 14, 2025          **NILAN JOHNSON LEWIS P.A.**

By:  *s/ Kathleen K. Curtis*
        Kathleen K. Curtis (#0388279)
        250 S. Marquette Ave., Suite 800
        Minneapolis, MN  55401
        Telephone:  (612) 305-7500
        Fax:  (612) 305-7501
        kcurtis@nilanjohnson.com

*Attorneys for Defendant Clear Blue Specialty Insurance Company*

17